IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MODDHA INTERACTIVE, INC., | ) | CIV. NO. 12-00028 BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | DEFENDANT'S MOTION TO |
| | ) | DISMISS PLAINTIFF'S THIRD |
| PHILIPS ELECTRONIC NORTH | ) | THROUGH SIXTH CAUSES OF |
| AMERICA CORPORATION, | ) | ACTION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S THIRD THROUGH SIXTH CAUSES OF ACTION**

Before the Court is Defendant Philips Electronics North America

Corporation's ("Philips") Motion to Dismiss Plaintiff's Third through Sixth Causes

of Action ("Motion to Dismiss"). (Doc. 136.) After careful consideration of the

Motion, the supporting and opposing memoranda, and the arguments of counsel, the

Court finds that MODDHA Interactive, Inc.'s ("MODDHA") fraud and unfair

competition counts are preempted by the Uniform Trade Secrets Act ("UTSA"), and

that MODDHA's trade secret misappropriation and breach of contract claims are

barred by the applicable statute of limitations. Philips' Motion to Dismiss is

therefore GRANTED. Because granting leave to amend would be futile, this dismissal is without leave to amend.

## BACKGROUND

In early 2001, MODDHA's predecessor-in-interest, Porrazzo Strategic Technologies ("PST") began discussions with Philips about a potential business cooperation regarding certain PST Technologies. (Doc. 140 at 11-12; Doc. 140-3 at 1.) In pursuant of this potential business cooperation, PST and Philips entered into a Non-Disclosure Agreement ("NDA") on March 2, 2001, with the purpose of reviewing and exchanging information concerning PST technologies and Philips technologies relevant to the refinement and application of PST technologies. (Doc. 140 at 13; Doc. 141-9 at 1.) Under the NDA, the parties were able to disclose proprietary or confidential information to each other, with the agreement that:

> The receiving party will treat and safeguard Confidential Information of the other party with the same standard of care (but at least a reasonable standard of care) that the receiving party employs for its own Confidential Information and shall not, without the prior written approval of the disclosing party, (a) disclose any Confidential Information to a third party, (b) use Confidential Information in any way for the benefit of any third parties, and/or (c) use Confidential Information in any way other than for PURPOSE.

(Doc. 141-9 at 1.) The NDA further provides that all confidential information exchanged between the parties "shall remain the property of the disclosing party, and shall be promptly returned to the disclosing party at its request or destroyed after

2

the receiving party's need for it has expired, and in any event, upon termination of this Agreement." (Doc. 141-9 at 1.) The NDA was to last until and cover information received by a receiving party until one year from the date of execution of the NDA, but "all duties of confidentiality and non-use shall extend until three years from the date of execution" of the NDA. (Doc. 141-9 at 1.)

On June 22, 2001, PST and Philips executed a Memorandum of Understanding ("MOU"), pursuant to which PST was to provide samples, instructions, and confidential information regarding the MODDHA QT Technology to Philips for Philips' evaluation. (Doc. 140 at 12; Doc. 140-3 at 1.) The MOU expressed the intentions of PST and Philips to investigate a potential business cooperation that "could potentially take the form of an investment, a license, a product purchase, any combination thereof, or another form." (Doc. 140-3 at 1.) The MOU further indicates that any such cooperation

> is conditional upon an attractive business proposition which shall be determined at the sole discretion of Philips and upon positive findings from any appropriate evaluation by Philips of PST's business (Evaluation), conducted and judged at the sole discretion of Philips.

(Doc. 140-3 at 1.) The MOU was non-binding and was set to terminate three months from the Effective Date, unless otherwise extended by written agreement signed by both parties. (Doc. 140-3 at 2.) The MOU also encompasses a confidentiality clause, which was intended to survive the termination of expiration

of the MOU, and provides that:

> PST and Philips each agree that it shall not disclose and shall keep
> confidential any confidential and proprietary information furnished to
> it by the other Party in connection with the discussions and negotiations
> under this MoU [sic] and the cooperation contemplated herein, in
> accordance with the confidentiality provisions set forth in the
> Non-Disclosure Agreement entered into between PST and Philips, the
> terms and conditions of which are hereby incorporated herein by this
> reference . . . All such transferred materials will be returned to the
> originating Party in the event negotiations of the final agreement proves
> unsuccessful, or anytime upon written request.

(Doc. 140-3 at 2-3.)   Thus, the terms of the NDA, along with its duties of

confidentiality, were incorporated by reference into the MOU.   (See id.)

In accordance with the MOU, PST supplied samples and detailed

manufacturing instructions to Philips of various PST technologies.   (Doc. 131 at 7,

¶ 17; Doc. 140 at 14.)   In reliance on the protections of the confidentiality provided

by both the MOU and the NDA, PST's Director of Engineering and Technology

Team walked Philips' representatives through the manufacturing process of PST

technologies step-by-step and disclosed trade secrets, such that Philips was provided

with everything it needed to go from sample to manufactured product.   (Doc. 131 at

7-8, ¶ 18; Doc. 140 at 14.)

Sometime after September 11, 2001, Philips notified PST that the

economic climate following the attack on the World Trade Center prevented Philips

from making an investment at that time.   (Doc. 131 at 9, ¶ 19; Doc. 140 at 15.)

Thereafter, PST requested that Philips return all materials that PST had provided to it. (Doc. 131 at 9, ¶ 20; Doc. 140 at 15.) Philips indicated that it would consider a future investment in PST only if PST allowed Philips to retain the samples and confidential materials PST previously provided. (Doc. 131 at 9, ¶ 20; Doc. 140 at 15.) MODDHA accepted the representation of Philips, and permitted Philips to retain the materials with the terms of the MOU and NDA remaining in place. (Doc. 140 at 15.)

No further or renewed negotiations were ever pursued by Philips, and in the summer of 2008, Edward Michael Porrazzo, CTO of MODDHA, noticed that Philips was marketing and selling a home theater system through Costco Wholesale that utilized loudspeakers with components that appeared to be designed and manufactured in accordance with the PST technology previously shared with Philips. (Doc. 131 at 2, ¶ 3; Doc. 140 at 15.) MODDHA promptly retained patent counsel to investigate whether its patents had been infringed. (Doc. 140 at 16.) At this time, Philips actively and affirmatively denied using any of the confidential information obtained from MODDHA in 2001. (Doc. 140 at 16.)

On January 13, 2012, MODDHA filed its Original Complaint against Defendant Philips Electronics North America, Inc., alleging the infringement on two of its U.S. Patents, Patent Numbers 5,430,805 ("805 Patent") and 5,953,438 ("438

Patent"), under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.  (Doc. 1 at 3, 4-7.)   MODDHA is a corporation with its corporate headquarters in the State of Hawaii, and is wholly owned by Edward Michael Porrazzo ("Porrazzo"), who is the co-inventor of the 805 and 438 Patents, and Veronika Sandor, the President of MODDHA and Porrazzo's wife.  (Doc. 1 at 2, ¶ 1.)   MODDHA filed suit, alleging that Philips Electronics North America, Inc., infringed on its 805 and 438 Patents through its manufacture, use, sale, importation, and/or offer for sale products that incorporate a neodymium ribbon tweeter.  (Doc. 1 at 4-7.)   MODDHA sought declaratory relief, damages, and attorneys' fees and costs.  (Doc. 1 at 8.)   On January 18, 2012, MODDHA filed a First Amended Complaint ("FAC") naming Philips as a Defendant.   (Doc. 6 at 1-2.)

On March 12, 2012, Philips filed an Answer to MODDHA's FAC, denying the allegations set forth in the FAC and asserting various defenses.  (Doc. 22.)   Philips also asserted a Counterclaim against MODDHA seeking declaratory judgment, under 28 U.S.C. § 2201 et seq., that the 805 and 438 Patents are invalid and have not been infringed upon by Philips.  (Doc. 22-4 at 1, ¶ 1.)   In its Counterclaim, Philips further alleged a Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and a Violation of the Hawaii Uniform Deceptive Trade Practice Act, Hawaii Revised Statutes ("HRS") § 481A-3.   (Doc. 22-4 at 6-11.)

On July 18, 2014, MODDHA filed a Motion for Leave to File a Second Amended Complaint. (Doc. 104, Doc. 104-1 at 1.) Philips filed its opposition on September 29, 2014 (Doc. 113), and MODDHA filed its reply on October 6, 2014. (Doc. 115.) A hearing on MODDHA's Motion for Leave to File a Second Amended Complaint was heard on November 21, 2014, and the Court granted the motion. (Doc. 130.) That day, MODDHA filed its Second Amended Complaint ("SAC"). (Doc. 131.)

The SAC alleged the following causes of action: (1) Infringement of U.S. Patent No. 5,430,805; (2) Infringement of U.S. Patent No. 5,953,438; (3) Breach of Contract; (4) Fraud; (5) Misappropriation of Trade Secrets; and (6) Unfair Competition. (Doc. 131 at 12-27.) MODDHA sought a declaration from this Court that Philips infringed on one or more of its patents, and MODDHA also requested an award of damages for all injuries suffered by MODDHA as a result of Philips' patent infringement, breach of contract, fraud, misappropriation of trade secrets, and unfair competition, as well as an award of attorneys' fees and costs. (Doc. 131 at 28.) On January 6, 2015, the parties subsequently stipulated to dismiss, with prejudice, MODDHA's first and second counts, which alleged the infringement of the 805 and 438 Patents. (Doc. 139.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") "tests the legal sufficiency of a claim."   Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).   A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.   Id.   "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."   Id. (citation omitted).   Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.   Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).   The Court must accept all allegations of material fact as true and construe them in a light most favorable to the nonmoving party; however, the Court need not accept as true conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences.   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).   Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A motion to dismiss based on the running of the statute of limitations

period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (internal quotation marks and citation omitted). A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. Id. at 1207.

## **DISCUSSION**

As an initial matter, because this case involves claims that raise a choice of law issue, the Court generally must first determine which jurisdiction's substantive law applies before it may evaluate the parties' claims on their merits. Although neither party has directly addresses this question in their briefing on Philips' motion, each party supports their arguments by reference to both Hawaii and California law, and neither argues in favor of the application of one jurisdiction's law over the other. Accordingly, the Court need not and does not question the parties' assumptions on that point. See Davis v. Grant Park Nursing Home LP, 639 F. Supp. 2d 60, 65 (D. D.C. 2009) (noting that where all parties assume that a specific jurisdiction's law controls, the Court need not question the parties' assumptions on that point). This Court agrees that dismissal of MODDHA's third through sixth claims is proper irrespective of whether Hawaii or

California law applies, and therefore, the Court need not address choice of law questions sua sponte.   See In re Korean Air Lines Disaster, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte.").

## I.    Claims Preempted under UTSA

Philips first argues that MODDHA's claims of fraud and unfair competition are preempted by the UTSA, as implemented by either the Hawaii UTSA ("HUTSA") or the California UTSA ("CUTSA").   (Doc. 136-1 at 10.) Philips maintains that both the HUTSA and the CUTSA expressly displace all causes of action based on the alleged misuse of confidential information, and thus, MODDHA's fraud and unfair competition claims should be dismissed because the SAC "does not make out a cognizable legal theory" for those claims independent of Philips' alleged misuse of confidential information.   (Doc. 136-1 at 11.)

The UTSA created a model statutory cause of action for misappropriation of trade secrets.   BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 235 P.3d 310, 313-14 (Haw. 2010).   The authors of the UTSA intended it to "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it."   Id. at 314 (citations and internal quotation marks omitted).   Both the States of Hawaii and California have

adopted the UTSA, which codifies a cause of action for the misappropriation of confidential information, for which it provides both damages and injunctive relief. See HRS chapter 482B; Cal. Civ. Code §§ 3426-3426.11.   Under these statutes, "misappropriation" requires the "acquisition" or "disclosure of use" of confidential information.   See HRS § 482B-2; Cal. Civ. Code § 3426.1(b).   As discussed more thoroughly below, under both the HUTSA and the CUTSA, all common law claims that are based upon the misappropriation of a trade secret are preempted.

The HUTSA "displaces conflicting tort, restitutionary, and other law[s] of [the State of Hawaii] providing civil remedies for misappropriation of a trade secret" except for (1) contractual remedies, whether or not based upon the misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.   HRS § 482B-8.   The Hawaii Supreme Court held that the HUTSA's preemptive force reaches more than simply claims of or for appropriation of a trade secret, and that an analysis of the plaintiff's allegations is necessary to determine whether a claim is based upon misappropriation of a trade secret.   BlueEarth Biofuels, 235 P.3d at 316-318. Ultimately, the Hawaii Supreme Court adopted the "same proof standard" in determining the extent of HUTSA preemption.   Id. at 318.   Under the "same

proof" test,

> a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it.

Id. at 315. The Hawaii Supreme Court qualified its holding, however, by stating that it is "unnecessary to determine whether or not the information at issue meets the definition of a trade secret before addressing displacement under the HUTSA," because the HUTSA "displaces non-contract civil claims based upon the alleged acquisition, disclosure, or use of confidential information that does not rise to the level of a statutorily-defined trade secret." Id. at 325. Moreover, the Hawaii Supreme Court clarified that "[t]o the extent . . . that the claim is 'based upon wrongful conduct[,] independent of the misappropriation of trade secrets[,]' it will not be preempted by the HUTSA." Id. at 319 (quoting Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 270 F. Supp. 2d 943, 950 (W.D. Mich. 2003)). Therefore, under the HUTSA, "if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements of proof were necessary to establish it," however, "a claim may survive to the extent it alleges wrongful conduct

independent of the misappropriation of trade secrets." BlueEarth Biofuels, 235 P.3d at 324-25 (brackets omitted).

California courts take a similar approach. The CUTSA "occupies the field" of common law claims based on the misappropriation of a trade secret, Mattel, Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911, 985 (C.D. Cal. 2011) (citation omitted); however, it does not supersede other civil remedies that are not based upon misappropriation of a trade secret, or contractual or criminal remedies, whether or not based upon misappropriation of a trade secret. Cal. Civ. Code § 3426.7(b). Like the HUTSA, the CUTSA preempts other claims based on misappropriation of confidential information, regardless of whether that information ultimately meets the statutory definition of a trade secret. Mattel, Inc., 782 F. Supp. 2d at 987. California courts have held that the CUTSA preempts, displaces, and supersedes all claims "based on the same nucleus of facts as trade secret misappropriation." K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 962 (2009); see also Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1033-35 (N.D. Cal. 2005) (holding that unfair competition claim was preempted by CUTSA because it was based on same nucleus of facts as trade secrets misappropriation claim). "In other words, preemption generally applies where 'there is no material distinction' between the wrongdoing underlying the UTSA

claim and the non-UTSA claim." ATS Prods. Inc. v. Ghiorso, Civ. No. 10-4880

BZ, 2012 WL 253315 (N.D. Cal. Jan. 26, 2012); but see Postx Corp. v. Secure Data

in Motion, Inc., Civ. No. 02-04483 SI, 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20,

2004) (holding that unfair competition claim was not preempted by UTSA where the

claim was "based on an alternative theory of liability as well as on new facts").

Thus, to avoid CUTSA preemption, a claim must "retain sufficient independent facts

to be viable after the trade secret facts are removed. Jardin v. DATAllegro, Inc.,

Civ. No. 10-2552, 2011 WL 3300152, at *2 (S.D. Cal. July 29, 2011) (internal

quotation marks and citation omitted).

Thus, under both the HUTSA and CUTSA, civil claims such as fraud

and unfair competition are preempted, unless they are based upon a broader

spectrum of misconduct than the misappropriation of confidential information.

MODDHA contends that its fraud and unfair competition claims are not preempted

because these claims are "based on Philips' fraudulent conduct misappropriating

MODDHA's business regardless of Philips' use of the MODDHA QT Technology

and PST's trade secret information." (Doc. 140 at 22.) Specifically, MODDHA

argues that apart from the misuse of MODDHA technology, Philips'

misrepresentations regarding a potential future business relationship with

MODDHA, and MODDHA's reliance thereon, caused MODDHA to miss other

legitimate and profitable business opportunities. (Doc. 140 at 22-24.) MODDHA maintains that Philips' misrepresentations are sufficient to establish both its fraud and unfair competition claims on something other than the misappropriation of trade secrets, and therefore, these claims are not preempted by the UTSA. (Doc. 140 at 22-26).

As articulated in MODDHA's SAC, both the fraud and unfair competition claims are based on Philips' alleged misappropriation of the confidential information MODDHA shared with Philips in reliance on the MOU and NDA's confidentiality clauses, and also on Philips' representations about the prospect of entering into a business relationship with MODDHA. Specifically, MODDHA alleges, in relevant part, that (1) Philips made false representations to MODDHA regarding its intention of entering into a business relationship with PST (Doc. 131 at 22, ¶ 56(f)); (2) Philips made false representations with respect to its evaluation and use of MODDHA QT Technology (Doc. 131 at 20, ¶ 54); (3) Philips entered into a confidentiality agreement with MODDHA agreeing to maintain the confidentiality of the information provided to Philips (Doc. 131 at 6, ¶ 15); (4) MODDHA transferred confidential and proprietary information pertaining to its technologies and products to Philips, and also provided Philips with samples of MODDHA technologies in reliance of the prospect of cultivating a business

relationship with Philips and in reliance of the confidentiality agreements in place

(Doc. 131 at 7-8, ¶¶ 17-18, Doc. 131 at 23, ¶ 57); (5) Philips shared MODDHA's

confidential information with Philips' longstanding business partner, Eastech, with

the intent to utilize MODDHA's confidential information to manufacture products

under the Philips brand name (Doc. 131 at 22, ¶ 56(f)); and (6) MODDHA has been

damaged as a result of the misrepresentations made by Philips.   (Doc. 131 at 23-24,

¶ 59.)   These same facts form the basis of a trade secret claim under either the

HUTSA of the CUTSA.

Under the HUTSA's "same proof" test a claim will be preempted when

it necessarily rises or falls based on whether the defendant is found to have

"misappropriated" confidential information.   See BlueEarth Biofuels, 235 P.3d at

315.   The HUTSA defines "misappropriation," in part, as the acquisition of

confidential information of another by a person who knows or has reason to know

that the trade secret was acquired by improper means, which includes the acquisition

of confidential information via misrepresentation or breach of a duty to maintain

secrecy.   HRS § 482B-2.   The HUTSA also defines "misappropriation" as the

"[d]isclosure or use" of confidential information of another "without express or

implied consent" by a person who, at the time of the disclosure or use, knew or had

reason to know that the confidential information was, inter alia, "[a]cquired under

circumstances giving rise to a duty to maintain its secrecy or limit its use[.]" HRS §

482B-2. Thus, MODDHA's allegations that Philips disclosed MODDHA's

confidential technology to Eastech form the basis of a trade secret claim under the

HUTSA. Likewise, under the CUTSA, MODDHA's fraud and unfair competition

claims are "based on the same nucleus of facts as trade secret misappropriation."

K.C. Multimedia, Inc., 171 Cal. App. 4th at 962; Cal. Civ. Code § 3426.1 (defining

misappropriation in terms identical to that of the HUTSA). Thus, as alleged,

Plaintiff's fraud and unfair competition claims are based upon a misappropriation of

MODDHA's confidential information, and therefore, these claims are preempted

under either the HUTSA or the CUTSA.

      Inasmuch as MODDHA argues that its fraud and unfair competition

claims are not preempted because they are based on an alternative theory of liability,

(see Doc. 140 at 22), the Court finds that MODDHA's SAC, on its face, is

insufficient in this regard. MODDHA contends that apart from Philips' alleged

misappropriation of MODDHA's confidential information, MODDHA's fraud and

unfair competition claims are based on Philips' false representations regarding the

potential formation of a business relationship during a time that MODDHA was

"actively soliciting business relationships with several manufacturers and

distributors of electronic devises [sic]" who might be interested in commercializing

the manufacture and sale of devices utilizing MODDHA's technology, and MODDHA's reliance on Philips' false representations caused it to miss "other legitimate and profitable business opportunities." (Doc. 140 at 22-23.) The elements of fraud are (1) false representations made by the defendant; (2) with knowledge of their falsity; (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance. See Larsen v. Pacesetter Sys., Inc., 837 P.2d 1273, 1277 (Haw. 1992); Engalla v. Permanente Med. Grp., Inc., 938 P.2d 903, 974 (Cal. 1997). In order to avoid preemption under either the HUTSA or the CUTSA, MODDHA must retain sufficient independent facts to plead a viable fraud claim after the trade secret facts are removed. See Jardin, 2011 WL 3300152, at *2; BlueEarth Biofuels, 235 P.3d at 324. Inasmuch as MODDHA's SAC fails to allege any harm from the alleged missed business opportunities, MODDHA is unable to demonstrate its detrimental reliance on Philips' alleged misrepresentations. Therefore, MODDHA's claims of fraud and unfair competition do not escape UTSA preemption, and are therefore preempted under either the HUTSA or the CUTSA.

## II.     Claims Time-Barred by Lapse of Statute of Limitations

Philips next argues that MODDHA's trade secret misappropriation and breach of contract claims should be dismissed because they are barred by the applicable statute of limitations under both Hawaii and California law. (Doc. 136-1

at 16-24.)   MODDHA does not contest that the applicable statute of limitations for these claims has run, and instead argue that the statute of limitations for these claims were tolled under (1) the doctrine of fraudulent concealment; (2) the doctrine of equitable estoppel; and (3) Philips' continuing breach.   (Doc. 140 at 26-35.)   For the reasons discussed below, MODDHA's trade secret misappropriation and breach of contract claims are time barred.

### A.   Trade Secret Misappropriation

With respect to MODDHA's trade secret misappropriation claim, Philips argues that under either Hawaii or California law, the statute of limitations bars claims brought more than three years "after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered," (Doc. 136-1 at 17), and MODDHA's suspicion of Philips' improper use of MODDHA technology in 2008 triggered the running of the statute of limitations.   (Doc. 136-1 at 18.)   Under either Hawaii or California law, the statute of limitations for trade secret misappropriation bars claims brought more than three years "after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."   HRS § 482B-7; Cal. Civ. Code § 3426.6.

Under California's discovery rule, a suspicion of wrongdoing will trigger the statute of limitations.   Gabriel Techs. Corp. v. Qualcomm Inc., 857 F.

Supp. 2d 997, 1003 (S.D. Cal. 2012).   Hawaii case law follows California precedent

regarding the application of the discovery rule.   See Ass'n of Apartment Owners of

Newtown Meadows v. Venture 15, Inc., 167 P.3d 225, 274 (Haw. 2007) (quoting

Jolly v. Eli Lilly & Co., 751 P.2d 923, 928 (Cal. 1988)) (applying the "suspicion of

wrongdoing" standard from California law).   A plaintiff has reason to discover a

cause of action when he or she "has reason at least to suspect a factual basis for its

elements."   Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914, 920 (Cal. 2005).

"[T]he misappropriation that triggers the running of the statute is that which the

plaintiff suspects, not that which may or may not actually exist."   Cypress

Semiconductor Corp. v. Super. Ct., 163 Cal. App. 4th 575, 586 (Cal. Ct. App. 2008).

Consequently, "[w]hen there is reason to suspect that a trade secret has been

misappropriated, and a reasonable investigation would produce facts sufficient to

confirm this suspicion (and justify bringing suit), the limitations period begins, even

though the plaintiff has not conducted such an investigation."   Gabriel Techs.

Corp., 857 F. Supp. 2d at 1003.   Indeed, the law is clear that

> Once the plaintiff has a suspicion of wrongdoing, and therefore an
> incentive to sue, she must decide whether to file suit or sit on her rights.
> So long as a suspicion exists, it is clear that the plaintiff must go find
> the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 751 P.2d 923, 928 (Cal. 1988).

It its SAC, MODDHA alleges "it first came to the attention of Porrazzo

that Philips was marketing and selling a home theater system being sold through Costco Wholesale which utilized loudspeakers with components, described by Philips as 'Neodymium Ribbon Tweeters,' that appeared to be designed and manufactured in accordance with the [technology MODDHA] had shared with Philips in 2001." (Doc. 131 at 10, ¶ 22.) MODDHA further alleges that this discovery "prompted MODDHA to investigate whether its patents had been infringed and, after engagement of patent counsel, to conclude, in late 2010 and beginning of 2011, that infringement had occurred." (Doc. 131 at 10, ¶ 23.) Thus, upon discovery of the home theater system that appeared to utilize confidential technology MODDHA shared with Philips, MODDHA had reason to discover a cause of action because it had "reason at least to suspect a factual basis for its elements." Fox, 110 P.3d at 920. As such, the limitations period began upon MODDHA's suspicion of wrongdoing in the summer of 2008, notwithstanding whether MODDHA decided to conduct a further investigation at that time. Gabriel Techs. Corp., 857 F. Supp. 2d at 1003. Thus, the Court finds that the statute of limitations for MODDHA's trade secret misappropriation claim expired in the summer of 2011, and this claim is therefore time barred.

**B. Breach of Contract**

Philips argues that MODDHA's breach of contract claim is untimely

under either California or Hawaii law.  (Doc. 136-1 at 19.)  Philips maintains that MODDHA was able to discover the alleged wrong when its representatives saw the accused Philips products openly sold in Costco Wholesale.  (Doc. 136-1 at 22.)  In its SAC, MODDHA alleges, as a bases for its Breach of Contract claim, "[b]eginning at least as early as 2002, and continuously thereafter, Philips breached the express and implied terms and conditions of the NDA and the MOU by using the confidential information supplied by [MODDHA's predecessor] and by disclosing such confidential information to at least one third party[.]"  (Doc. 131 at 18-19, ¶ 48.)  Thus, if MODDHA's allegations are taken as true, the contract was breached "at least as early as 2002[.]"

Under Hawaii law, the statute of limitations for a breach of contract is six years.  See HRS § 657-1(1) (explaining that an action for breach of contract "shall be commenced within six years next after the cause of action accrued, and not after").  This six-year period generally begins upon breach of the contract.  See Lindner v. Meadow Gold Dairies, Inc., 515 F. Supp. 2d 1141, 1151-52 (D. Haw. 2007); see also Au v. Au, 626 P.2d 173, 180 (Haw. 1981) ("Normally, the statute of limitations begins to run on a contract when the contract is breached.").  That is, "a right of action accrues whenever a breach of contract has occurred as will give a right to then bring and sustain a suit."  Water Comm'n of Cnty. of Hawai'i v. Nat'l

Am. Ins. Co., 930 F. Supp. 1411, 1419 (D. Haw. 1996) (internal quotation marks and ellipses omitted).  Inasmuch as MODDHA alleges that Philips breached their contract "at least as early as 2002," the statute of limitations for MODDHA's breach of contract claim expired some time in 2008, six years after the alleged breach. MODDHA filed its original Complaint in 2012, and did not amend its Complaint to add a cause of action for breach of contract until 2014, well outside of Hawaii's statutory limitation period for breach of contract claims.[1]

Under California law, the statute of limitations for a claim of breach based on a written contract is four years.  Cal. Civ. Proc. § 337(1).  Generally, a cause of action for breach of contract "accrues at the time of the breach" and the statute begins to run "regardless of whether any damage is apparent or whether the injured party is aware of their right to sue."  Gabriel Techs. Corp., 857 F. Supp. 2d at 1010 (internal quotation marks and citation omitted).  An exception to this is provided under the "discovery rule," under which a breach of contract claim accrues when the plaintiff "discovers or could have discovered, through the exercise of

---

[1] The Court notes that under the "relation back" doctrine, if a new cause of action added by amendment "relates back" to the claims of the initial complaint, the new cause of action will be deemed, for purposes of the statute of limitations, to have been filed on the date of filing of the initial complaint.  See Jaffe v. Cnty. of Santa Clara, Civ. No. 03-00137 WHA, 2008 WL 2050813, at *5 (May 13, 2008).  Under this doctrine, an amended pleading will "relate back" if it "(1) rests on the same general set of facts as the original complaint and (2) refers to the same accident and the same injuries as the original complaint."  Id. (citation omitted).  Here, both MODDHA's initial and first amended complaints make no mention of the NDA or of the MOU, nor do the complaints make any reference to MODDHA's discovery of Philips' allegedly offending products in Costco Wholesale in the summer of 2008.  (See Docs. 1, 6.) Accordingly, MODDHA's breach of contract claim may not rest on the same general set of facts as the original complaint, and the SAC will not "relate back" to the filing of MODDHA's initial complaint.

reasonable diligence, all of the facts essential to his cause of action." Id. (internal

quotation marks and citation omitted). This more lenient "discovery rule" is

applied in select cases where (1) "[t]he injury or the act causing the injury, or both,

have been difficult for the plaintiff to detect"; (2) "the defendant has been in a far

superior position to comprehend the act and the injury"; and (3) "the defendant had

reason to believe the plaintiff remained ignorant he had been wronged." Id. The

rationale underlying application of California's discovery rule is that "plaintiffs

should not suffer where circumstances prevent them from knowing they have been

harmed and defendants should not be allowed to knowingly profit from their

injuree's ignorance." El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1039 (9th Cir.

2003) (internal quotation marks, ellipsis, brackets, and citation omitted). Even

assuming California's discovery rule applies, MODDHA's breach of contract claim

is outside of the statutory limitation period. Upon MODDHA's discovery of

Philips' products allegedly utilizing MODDHA's technologies for sale at Costco

Wholesale, MODDHA could have discovered, through the exercise of reasonable

diligence, all of the facts essential to its cause of action in the summer of 2008.

Gabriel Techs. Corp., 857 F. Supp. 2d at 1010. Thus, under California law, the

limitation period for MODDHA's breach of contract claim expired sometime during

the summer of 2012. It was not until the filing of its SAC in 2014 that MODDHA

alleged a cause of action for breach of contract (see Doc. 131); therefore,

MODDHA's breach of contract claim is outside of the statutory limitation period

under California law.[2]

### C. Tolling of the Statute of Limitations

A claim may be dismissed under FRCP Rule 12 as "barred by the

applicable statute of limitations only when the running of the statute is apparent on

the face of the complaint," and "only if the assertions of the complaint, read with the

required liberality, would not permit the plaintiff to prove that the statute was

tolled." Rundgren v. Bank of New York Mellon, 777 F. Supp. 2d 1224, 1227 (D.

Haw. 2011) (internal quotation marks and citations omitted). Here, MODDHA

does not argue that its claims were filed within the statutory limitations period;

rather, MODDHA argues that the statute of limitations on its trade secret

misappropriation and breach of contract claims should be tolled under (1) the

doctrine of fraudulent concealment; (2) the doctrine of equitable estoppel; and (3)

due to Philips' continuing breach of the MOU. (See Doc. 140 at 26-35.)

Inasmuch as MODDHA brought suit outside the statutory limitations period,

MODDHA has the burden of proving the facts necessary to toll the statute. See

---

[2] As discussed in note 1, supra, MODDHA's second amended complaint, which alleges a cause of action for breach of contract, would not relate back to the filing of MODDHA's initial complaint in January 2012. Therefore, even assuming California's discovery rule would apply here, MODDHA's breach of contract claim is nevertheless barred by the statute of limitations.

Rundgren, 777 F. Supp. 2d at 1227.

### 1. Doctrine of Fraudulent Concealment

MODDHA contends that the statutory limitations for its trade secret misappropriation and breach of contract claims should be tolled "because Philips actively concealed its tortious activities prior to and after the filing of MODDHA's Patent Complaint and breached its duty of confidentiality." (Doc. 140 at 26.) "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012). Fraudulent concealment involves the actions taken by a liable party to conceal a known cause of action, and has been defined as "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." Hancock v. Kulana Partners, LLC, 992 F. Supp. 2d 1053, 1062 (D. Haw. Jan. 10, 2014) (quoting Au, 626 P.2d at 178) (internal quotation marks and brackets omitted). In order for the doctrine of fraudulent concealment to apply, "[t]he acts relied on must be of an affirmative character and fraudulent." Id. (quoting Au, 626 P.2d at 178). Under both Hawaii and California law, there can be no fraudulent concealment if there is a "known cause of action." See Mroz v. Hoaloha Na Eha,

Inc., 360 F. Supp. 2d 1122, 1129 (D. Haw. Feb. 22, 2005) ("If there is a known cause of action there can be no fraudulent concealment[.]"); Sanchez v. S. Hoover Hosp., 553 P.2d 1129, 1133-34 (Cal. 1976) ("It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it."). Moreover,

> It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

Mroz, 360 F. Supp. 2d at 1129 (internal quotation marks and citation omitted).

Here, MODDHA admits in its SAC that in the "summer of 2008 . . . it first came to the attention of Porrazzo that Philips was marketing and selling a home theater system . . . that appeared to be designed and manufactured in accordance with the PET technology PST had shared with Philips in 2001." (Doc. 131 at 10, ¶ 22.) MODDHA further admits that this discovery, "prompted MODDHA to investigate whether its patents had been infringed[.]" (Doc. 131 at 10, ¶ 23.) Accordingly, MODDHA's suspicion of alleged wrongdoing in the summer of 2008 was sufficient to put MODDHA on notice of its causes of action for trade secret

misappropriation and breach of contract. Thus, even assuming Philips actively and fraudulently concealed information from MODDHA such that MODDHA, acting as a reasonable person, did not know of the existence of its trade secret misappropriation and breach of contract claims, the doctrine of fraudulent concealment would not toll the statute of limitations beyond MODDHA's discovery in the summer of 2008. Inasmuch as the statute of limitations for a trade secret misappropriation claim under either Hawaii or California law is three years, the statute of limitations for MODDHA's trade secret misappropriation claim would have expired in the summer of 2011. Additionally, inasmuch as the statute of limitations for a breach of contract claim is four to six years depending on the applicability of California or Hawaii law, the statute of limitations for MODDHA's breach of contract claim would have expired no later than the summer of 2014. It was not until November 21, 2014 that MODDHA amended its SAC to allege causes of action for trade secret misappropriation and breach of contract, (see Doc. 131), and therefore, the Court finds that these claims are not saved by the doctrine of fraudulent concealment.

## 2. Doctrine of Equitable Estoppel

MODDHA also argues that the applicable statutory limitation periods should be tolled under the doctrine of equitable estoppel. (Doc. 140 at 30.)

28

Equitable estoppel involves a circumstance in which a defendant is estopped from asserting the statute of limitations as a defense.   Andrews v. Cnty. of Hawaii, Civ. No. 10-00749 DAE-KSC, 2012 WL 425167, at *6 (D. Haw. Feb. 9, 2012).   One invoking equitable estoppel "must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable."   Id. (internal quotation marks and citation omitted). Under this doctrine, the plaintiff must point to some "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."   Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006) (internal quotation marks and citation omitted).   Moreover, "[t]he plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and 'must plead with particularity the facts which give rise to the claim of fraudulent concealment.'"   Id. at 706-07 (citation omitted).

Here, MODDHA's sole basis for its equitable estoppel claim is that it purportedly relied on the language of the allegedly breached contract itself in not filing suit.   (See Doc. 140 at 32.)   The facts of this case, as alleged by MODDHA, do not justify equitable estoppel.   Even assuming MODDHA's allegation regarding its decision not to file suit is true, MODDHA has not alleged that Philips engaged in any fraudulent conduct "above and beyond the wrongdoing upon which the

plaintiff's claim is filed." See Guerrero, 442 F.3d at 706. MODDHA has failed to plead with particularity any additional fraudulent behavior on the part of Philips that would excuse its delay in bringing this suit. Equitable estoppel, therefore, does not save MODDHA's breach of contract or misappropriation of trade secret claims from the statute of limitations.

### 3.    Continuing Breach

Lastly, MODDHA argues that Philips had a continuing obligation under the MOU to keep all information MODDHA disclosed to it confidential, and therefore, the continuing obligation doctrine tolled the statute of limitations on its breach of contract claim. (Doc. 140 at 32-33.) Under the continuing obligation doctrine, "where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously." Dominguez v. Price Okamoto Himeno & Lum, No. 28140, 2009 WL 1144359, at *4 (Haw. App. Apr. 29, 2009) (SDO) (quoting Stalis v. Sugar Creek Stores, Inc., 295 A.D.2d 939, 940-41 (N.Y. App. Div. 2002) (internal quotation marks omitted). "Thus, for the purposes of the statute of limitations, the effect of a continuing obligation in a contract is that the 'cause of action accrued anew every day for each continuation of the wrong.'" Id. (quoting Stalis, 295 A.D.2d at 941).

MODDHA alleges that "[o]n or about June 22, 2001," its predecessor,

PST, and Philips executed the MOU that is the basis of MODDHA's breach of contract claim.   (Doc. 131 at 6, ¶ 16.)   The MOU, which was effective for a term of three months, provides that its confidentiality provisions (Section 7) "shall survive the termination or expiration of [the] MoU [sic]."   (Doc. 141-10 at 2.)   Section 7 of the MOU, regarding confidentiality, further provides that each party "agree[s] that it shall not disclose and shall keep confidential any confidential and proprietary information furnished to it by the other Party . . . in accordance with the confidentiality provisions set forth in the Non-Disclosure Agreement entered into between PST and Philips[.]"   (Doc. 141-10 at 3.)   The Non-Disclosure Agreement, which was incorporated into the MOU, provides that "all duties of confidentiality and non-use shall extend until three years from the date of execution of this Agreement."   (Doc 141-9 at 1.)   Thus, assuming the MOU, which was executed on June 22, 2001, extended the three year termination date of the NDA, Philips' duties of confidentiality under the contract would have expired on June 22, 2004. MODDHA did not file its SAC alleging a cause of action for breach of contract until November 21, 2014, over ten years later, and well beyond the expiration of any of the applicable statute of limitations.   (See Doc. 131.)   Thus, the doctrine of continuing obligation is unavailable to toll the statute of limitations for MODDHA's breach of contract claim.

## CONCLUSION

The Court finds that MODDHA's claims of fraud and unfair competition do not escape UTSA preemption, and are preempted under either the HUTSA or the CUTSA. The Court further finds that MODDHA's trade secret misappropriation and breach of contract claims are barred by the applicable statutes of limitations, and the assertions contained in MODDHA's Second Amended Complaint, when read with the required liberality, are insufficient to prove that the applicable limitation periods were tolled. Accordingly, the Court GRANTS Philips' Motion to Dismiss Plaintiff's Third Through Sixth Causes of Action for failure to state a claim upon which relief can be granted (Doc. 136).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 10, 2015



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Moddha Interactive, Inc. v. Philips Electronics North America, Inc., et al., Civ. No. 12-00028 BMK, ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD THROUGH SIXTH CAUSES OF ACTION.

32